Good morning, Your Honors. Thomas John Triegel for the petitioner. I will be brief as fast as I can through the issues. The first several issues in this case were inconsistency. The law on inconsistency under Lye v. Holder quoting Sastra at 590 Fed 3rd 1034 to 1041 and 1042 in evaluating inconsistencies under 1158 B1 BII, the relevant circumstances that an IJ should consider include the petitioner's explanation for perceived inconsistency and other record evidence that sheds light on whether this is in fact an inconsistency. Well the first issue in this case was that stated by the BIA and the judge was that his testimony regarding his ability to obtain a passport in his own name and his ability to depart the airport with a proper exit visa stamp is inconsistent with his claim of being persecuted under the monitoring after he was he was detained. Well if you go to 228 of the record which is that which is the country condition reports and you actually look at the last lines on the country condition reports it says most citizens obtain passports although those government deemed potentially threats including religious leaders, political dissidents, petitioners, and ethnic minorities are routinely refused passports and otherwise prevented from traveling overseas. My client's not a religious leader. As in the recent case in Guo, he was also not a religious leader and he was able to depart under a student visa. So I don't see an inconsistency at all. They identified three others as well. Right and I'll move on to number two. Number two of the issue, inconsistency. IJ states in her decision that he did not consider himself to be a Christian and was even considered returning to China yet during the same period he filed an asylum application claiming fear of harm of being a Christian before an asylum officer in support of his application. But as I stated earlier in the law, it has to be perceived inconsistency. Nowhere in the record does the IJ address this to the petitioner as an inconsistency. The IJ only pulls out facts from petitioner's testimony then in the IJ's decision does the petitioner only learn of the perceived inconsistency. So he was never availed an opportunity to explain any It was all piecemeal. Nowhere was he ever asked, sir, well what when you apply for asylum in the asylum office but you said you're not practicing Christianity. Do you think that's an inconsistency? Personally I don't see it as an inconsistency because the questions he asked, he was truthful and nothing on the record was inconsistent. So I don't see it as an inconsistency. But if it was posed later on as an inconsistency on remand, then I would have to say that he should be availed the Moving on to the third issue. Taxi driver. Right. That was the issue that he was posed to. The IJ considered that the inconsistency between the respondents claimed that he was a taxi cab driver in 2006, whereas his household registry shows him to be working in a manufacturing industry. Well if you go back to page 228 of the record, which is the actual country condition reports, if you go to the from the bottom, the fourth paragraph where it says the household registry system, in there it actually delineates, it delineates that people that, that it states 279 million persons live outside the jurisdiction of their household registry. Of that number, 236 million individuals work outside their home district. Many migrant workers and their families face numerous obstacles with regards to working conditions and labor rights, and many were unable to access public services such as public education, social insurance, and in the cities where they lived and worked, because they were no legal, they were not legally registered urban residents. Well if you go to, let's go to the household registry. On the household registry, give me one second. On the household registry, your honor, it states that he moved in 2007, so he was buying a home, but it never shows that he was able to register his new job because he was moving outside of his district. So why didn't the judge consider that factor in making that decision? She didn't look at it at all. You know, maybe the judge did consider it. I think the argument you're making is an argument, you know, that could be made, I think, logically to the fact finder, but the inferences you're drawing from the record aren't the only rational inferences that can be drawn, are they? I correct, your honor, but in the totality of the circumstances as required under the Real ID Act, it wasn't considered, and it wasn't put in her analysis in the decision, and if it was, then I would say you're correct, your honor, but in this case, in her decision, she never addresses the actual country condition reports stating this disproportionate of people living outside the district and where they work and how they can't register it. Go ahead. So the household registry was designed so that not 1 billion people live in one area of China. Otherwise, it would be overburdened in one city. So that's why they cannot register their new jobs if they move, and if they don't have the permission by the Chinese government to do so. And here he is, he's trying to move. If you go to the household registry, it says on the bottom buying a house, moving, but he's not able to update his his work. What about the IJ's conclusion? I think this is correct, that even if you assume that the show persecution, right? Well, okay. That's that one of her findings? Yes, and that's under the new case law under Guo. Under Guo, if you look at it, Guo v. Sessions cited at... The IA said this case is not Guo. Well, there's two Guo's. They analyzed it under the 2004 Guo case, and there's a new case, and that's cited at Guo at Guo v. Sessions at 897 Fed 3rd 1208 9th Circuit 2018 has a different decision from that Guo. So if you compare, in the new Guo, they actually look at religious persecution, and the difference between Guo and Guo, Guo was able to actually practice his religion and go back to his home church. They didn't stop him. They were not interested in him under Guo, but under my client's case, he wasn't. He had to give up practicing his religion in the home church. He could no longer participate in it. That was one of the the actual release conditions, and that he had a report every Monday. Other than that, he was beaten worse than Guo, and he was detained longer than both of those cases, the recent Guo case. He was detained, my client was detained for 11 days. He had bruises all over his body. He was ignored about his conditions, his medical conditions, and then on top of it, you look at it, you know, the adding insult to injury, they're like, well, why did you get medical treatment after your release? Because I was healing inside a prison, whereas the other two cases under Guo and Guo, they were only detained minimum of two days or a day and a half. So even if you assume that he's credible, the IJ also pointed to failure to present corroborative evidence that the And said it was important. And of that, what I found a little bit troubling, of concern, I should say, is that he didn't present a declaration from his wife. He didn't present anything from the local pastors or ministers or whatever they might be called of his local church, and that was important to the IJ. Correct, but if let's look through the Act and what it requires, and the Act says IJ first must determine whether the petitioner has met petitioner's burden weighing the credible testimony along with other evidence. Well, here, he wasn't found credible. And more so, if you look at the disposition of the judge and the mindset, she was looking to deny this case before he even took any testimony. That's on page 191 of the record. 90, I'm sorry, 91 of the record. If you go to 91 of the record, on lines 10 and 11, sir, you understand that if I heard this case today, I would have to deny it because you don't have those documents. So how is a judge predisposed without hearing testimony to deny a case on lack of documents before even taking one word of testimony? That's an actual contradiction to the INA. The INA says you have to first determine credibility. What is the relief we're seeking, Your Honor, is actually to remand back down for further fact-finding in order to address and give him the opportunity to address these actual inconsistencies and or to show that they aren't. And if he is then found credible, then to give him notice and opportunity to present more documentation. Okay, I'll give you a minute for rebuttal. Thank you. We're back. Good morning, Your Honors. Sarah Pergolizzi for the government. May it please the court. As Your Honors noted today already in the petitioner's argument, the court should deny this petition for review on the basis of the substantial evidence. The petitioner has failed to show that the numerous inconsistencies for which the immigration judge cited to find that he did not testify credibly were not supported by the record evidence. Oh, I'm sorry. Go ahead. As Judge Toshima pointed out, while the record may suggest other conclusions with respect to some of the inconsistencies or whether the record also shows that the petitioner presented explanations for the inconsistencies in his testimony, that does not mean that the petitioner has succeeded on substantial evidence review. Maybe you can just quickly address some of them. For example, the first one which was that he was able to obtain a passport and leave even though the government had allegedly had him in their sight. Yes. And I was just about that. So, Your Honor, I would say that the inconsistency is more with respect to his fear of future harm. As the immigration judge found, the petitioner claimed that he would be sought out nationwide and arrested the second he returned. Didn't he claim he was under surveillance? He did claim he was under on a whole, not credible, that his wife told him that officers had come to his home once a year for three years. But in light of his other... In light of, excuse me, his ability to leave the country with a valid passport that he obtained after the beginning of the persecution he claims he suffered, the totality of the record shows that there are inconsistencies in his statement that he would be sought out should he return to China. Excuse me. While the petitioner argues that his use of an agent to procure his visa explains this inconsistency, that argument is unavailing because he sought his passport through normal channels before he sought his visa according to his own testimony. And so the explanation he provided, again, is insufficient to overcome this apparent inconsistency, and the immigration judge was under no obligation to take that explanation as true or as controlling. What about his... There was an inconsistency about his religious beliefs when he applied for asylum. Yes, Your Honor. I would argue that that is the most important and most... The most important inconsistency in this case, and the court may deny this petition for review on that basis alone. Because it's very important that the petitioner said that he did not consider himself a Christian at the time that he applied for his asylum through... Affirmatively through an asylum office. That lie to an asylum officer can suggest that he is not being credible to the immigration judge as well. While, again, the petitioner suggests that there is another inference that the court can draw from his statements that he did not consider himself a Christian during that year, that he was not attending church services in the United States, that is, that he was a newly arrived non citizen and that he was lonely, that's not the only inference that the court could draw. And again, therefore, he has failed to meet the substantial evidence review standard, and the court should deny the petition for review on that basis as well. What was inconsistent about his taxi, the difference between working as a taxi driver and the registration system? Well, again, that is inconsistency between his testimony and his account in his asylum application, that he was a taxi driver and that is how he became exposed to Christianity, and his household registry, which says that he was a worker at a light factory. Now, the petitioner offers numerous post hoc explanations, which are similar to the ones that he offered during his testimony, that he was not required to update his household registry because the work he was doing was private work, but that ignores the important distinction that the household registry was updated in 2007, and so it wasn't that he was registered as a light worker and then changed his job after the household registry was created, and therefore was under no obligation to update it, but that at the time the registry was created, or the one that we have in the record here, he was already not in the employment that he stated that he's in. And it's material because it's part of the origin of his claim. And again, so for that basis, the court can deny this petition for review. We would also like to point out, as the court was concerned with petitioner's argument here today, that the petitioner also failed to fully corroborate his claim, and that finding is part of the adverse credibility determination, as he was not otherwise deemed credible, and it is also a basis that this court may deny the petition for review. The petitioner failed to provide evidence that would bolster his claim and support his testimony. Well, he did provide a certificate of membership in... To the church. To New Life. Here in the United States. Right. Yes. And that certificate also is inconsistent with his testimony that he started attending that church in late 2012. But that, I mean, it was, I think, only a month's difference, that certificate said he became a member in January 2013. He also submitted a witness list saying that he would bring a pastor from that church, but he never did. Importantly, the immigration judge asked for numerous forms of corroborated evidence. She noted at the outside of the petitioner's proceedings that he may not be able to... That she required more corroboration than he had already provided to bolster his claim, and gave him specific examples of the kind of evidence that he could provide to strengthen his claim. And he provided one of the things she requested, but failed to provide... Or two of the things he requests... She requests. Sorry, three of the things she requested, but failed to provide other things. And his explanations, which the immigration judge gave him an opportunity to explain why he didn't have those other pieces of evidence that would have helped his claim, were insufficient, and the immigration judge wasn't required to credit his explanations as dispositive of his failure to provide that evidence. He did provide a statement with regards to the manner of his exit from China. And I did wanna point out that we misspoke in our brief when we said that he didn't provide that. He did provide it, but it was, again, insufficient to provide an explanation. It didn't quite address the discrepancy that the immigration judge noted in her decision, which was that his ability to obtain that passport, which he did before the assistance of the agent, again, belied his claim that he feared being persecuted immediately or being wanted by the police as soon as he was released. I would like to stress, before I conclude, if the court has no further questions, that the court may deny this petition for review and should on the basis of the adverse credibility determination alone, as the totality of the circumstances do support it. The court should not reach the alternative past persecution finding as the basis for this adverse credibility is strong. However, if the court addresses it, the court should also deny the petition for review on that basis, as we discussed in our brief. I'm sorry, on what basis? What alternative basis? That the petitioner has not suffered harm rising to the level of past persecution, or that he fears... Or that he has established that he faces a clear likelihood... Excuse me, a well-founded fear of future persecution. Could you go... You mentioned it, but could you go back through the relationship between the adverse credibility finding and the statutory provision about corroboration? Absolutely, Your Honor. Please go through that again. Sure, of course. The statutory provision dealing with corroboration necessitates that an immigration judge provide notice of required corroboration, an opportunity for the petitioner to explain that corroboration, but that provision is specifically qualified in that that notice and opportunity requirement only attaches if the alien is not otherwise... Or is otherwise credible, I'm sorry. And so in a case like this, where the alien is not considered credibly to have provided credible testimony, then a lack of corroboration is just another reason that he's not credible. And under this court's decision in Badaray... I'm sorry if I've pronounced that wrong. Even if the petitioner... The immigration judge's adverse credibility determination, the court determines that it is not supported by substantial evidence, this court need not remand so that the court could address the testimony, assuming it was credible and the lack of corroboration, because in this case, the immigration judge provided sufficient notice of the kinds of evidence that the petitioner's claim. The petitioner failed to provide those documents. And on the record, the immigration judge asked him about those documents and allowed him an opportunity to explain those documents. So just the fact that those explanations were unavailing does not put an impetus on the court to remand this case. It's both... The lack of corroboration is an independent basis in this case, even under Wren, if the court finds the petitioner was otherwise credible. But more importantly, in this case, it is another factor that supports the adverse credibility determination. If he was otherwise credible, what does the statute say has to be done? That, again, the statute and this court's decision in Wren v. Holder, which interprets that statute, is that the immigration judge must explicitly put the alien on notice of the kinds of documents he must provide, give him time to provide them, and then if he fails to provide them, give him an opportunity to explain why those documents were not available. Which are none here? In this case, Your Honor, yes. The immigration judge provided two warnings before the petitioner's merits hearing in this case and told him exactly what kinds of documents would be helpful to his claim, including things that he did provide, such as his household registry and his supplemental affidavit about his family. He also noted that affidavits from family members and affidavits from pastors in the United States would be very helpful in corroborating his claim. He failed to provide that evidence, and when asked about it, his only explanation was that he feared those documents would be given little weight because they would appear to be biased. And the immigration judge heard that explanation but found it insufficient. And so the statutory requirements and this court's decision in Wren is both supported by the record, but the court need not get that far, because if the court affirms the adverse credibility determination, the lack of corroboration is just another reason why the petitioner was not credible. And I see I'm very much out of time. Does the court have any other questions? Okay. I would just ask that the court... Thank you. Thank you. I'll give you... We'll put a minute on the clock where you can respond. Yes, Sean. So addressing the notice that the judge gave to the client, one of the things on page 83 she requested was medical records. Well, he never saw a doctor. Why is she requesting documents that he never was treated? So how was he going to be able to produce those documents when he never was treated by you can't get the documents because it never happened? This is why after credible testimony, after hearing everything, the judge should come up with a list and give proper notice and opportunity. But to give a generalized list beforehand and that doesn't meet even the affidavit in the record, I mean that's set up to fail because the client wouldn't be able to get medical records. That never existed. More importantly, why the judge in his religious issues where she said he doesn't testify, she never considered on page 182 lines 1 through 21. It basically states that also that, and actually page 181, that he had originally... I had intended to give up my beliefs as well as my freedom. Should I have been able to give up my beliefs, I would have gone back to China. As a result, after one year of my persistence, which I didn't give up my beliefs, so then I followed one friend to attend a new life church. That is nowhere in her decision in balancing the totality of circumstances that he's not a Christian. He said I'm not a devout Christian. Then he goes, he keeps on pressuring and saying, oh I'm not a qualified Christian. So what does that mean? I'm not qualified because I haven't been able to go to church. And he explains why he hasn't been able to go to church. He states, just after arriving in the United States, the friend I got to know was a very new friend. And since I had a new American life for a few days, and by going down there for two times, it was actually hard for me to find any job. I had a language barrier, which I was unable to communicate. I feel so lonely. So at that time, I did have an intention to give up my beliefs. So at that time, I could have given up my beliefs and I would have been getting ready to go back to China. But he never gave up his belief. All right, we got it. Thank you very much, Counselor, for your time. We appreciate your argument, appreciate counsel's argument for the government as well. The matter is submitted at this time.
judges: Tashima, Paez, Alsup